# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Anytime Fitness, LLC, a Minnesota
Limited Liability Company,

Civil No. 14-348 (DWF/JJG)

Plaintiff,

v.

**MEMORANDUM
OPINION AND ORDER**

Edinburgh Fitness LLC, a Minnesota
Limited Liability Company; Fit 12
Minnetonka, LLC, a Minnesota Limited
Liability Company; Mark Ravich, an
individual; and Harlen Mork, a/k/a
Harley Mork, an individual,

Defendants.

---

James M. Susag, Esq., and Susan E. Tegt, Esq., Larkin Hoffman Daly & Lindgren Ltd.,
counsel for Plaintiff.

Robert M. Smith, Esq., Robert M. Smith Law Office, counsel for Defendants.

---

# INTRODUCTION

This matter is before the Court on Plaintiff Anytime Fitness, LLC's ("AF")

Motion for a Preliminary Injunction against Defendants Edinburgh Fitness LLC

("Edinburgh"), Fit 12 Minnetonka, LLC ("Fit 12 Minnetonka"), Mark Ravich ("Ravich"),

and Harlen Mork, a/k/a Harley Mork ("Mork") (collectively, "Defendants") for alleged

violations of the franchise agreement between the parties, as well as for trademark

infringement.  (Doc. No. 6.)  For the reasons set forth below, the Court grants AF's

Motion.

## BACKGROUND

AF owns a franchise system of over 1,300 fitness centers around the world which are owned and operated by franchisees and are under the commercial trade name and service mark ANYTIME FITNESS®.  (Doc. No. 14 ("Yiangou Aff.") ¶¶ 2-3.)  AF claims that members choose ANYTIME FITNESS® locations based on the following: the trademarks, trade names, service marks, logos, designs, and commercial symbols ("Names and Marks") that identify a high level of quality and service; the reciprocity amongst all ANYTIME FITNESS® clubs for all members; and member access to AF's proprietary website, Anytime Health.  (*Id.* ¶¶ 4-7.)  When a franchisee joins the AF system, it has access to the AF Names and Marks, marketing and advertising systems, training programs, confidential proprietary manuals, and other materials to assist in operating the fitness centers.  (*Id.* ¶ 14.)  Franchisees also receive information on how to start and operate a fitness business, such as what equipment to purchase, club layout, the "menu" of services offered and recommended pricing, training in operating methods, a membership agreement, and access to a comprehensive security system.  (*Id.* ¶ 15.)  Finally, all franchisees and AF can communicate through an internet-based "Dashboard."  (*Id.* ¶ 16.)

Ravich has an ownership interest in a number of commercial properties in Minnesota, including Edinburgh Plaza in Brooklyn Park, Minnesota.  (Doc. No. 19 ("Ravich Aff.") ¶ 3.)  Ravich is a member of, and formed the entity, Edinburgh Fitness LLC.  (*Id.* ¶¶ 1, 4, 19.)  On October 8, 2008, Edinburgh and AF signed a franchise agreement (the "Agreement") for a franchise located in Brooklyn Park, Minnesota, in

Ravich's Edinburgh Plaza shopping facility.  (*Id.* ¶¶ 8-10, 13 & Ex. B.)  Defendant Mork

is a consultant to Edinburgh Fitness and worked with the Brooklyn Park ANYTIME

FITNESS®.  (Doc. No. 20 ("Mork Aff.") ¶¶ 2-3.)  The primary provision relevant to this

motion is paragraph 17 of the Agreement entitled "Your Covenants not to Compete,"

which includes the following language:

> B.    <u>After Expiration, Termination, or Transfer</u>.  You will not, directly or
> indirectly for a period of two (2) years after the transfer by you, or the
> expiration or termination of this Agreement, on your own account or as an
> employee, consultant, partner, officer, director, shareholder, lender, or joint
> venturer of any other person, firm, entity, partnership, corporation or
> company, own, operate, lease, franchise, conduct, engage in, be connected
> with, have any interest in or assist any person or entity engaged in any
> fitness center, which is located within the Protected Territory or within a
> twenty (20) mile radius of any Anytime Fitness center, wherever located,
> whether within the Protected Territory or elsewhere; provided, however,
> that in cities having a population of more than 50,000 persons, the
> foregoing twenty (20) mile radius restriction will be limited to a radius of
> five (5) miles from any Anytime Fitness center (including the one you
> formerly operated under this Agreement).

(*Id.* ¶ 8, Ex. B at 17.B.)

The Agreement also includes two relevant additions:  (1) a "Personal Guaranty

and Agreement to be Bound Personally by the Terms of the Franchise Agreement"

("Guaranty"); and (2) an "Amendment to Franchise Agreement" (the "Amendment").

Under the Guaranty, Ravich agreed to "become surety and guarantor for the

payment of all amounts and the performance of the covenants, terms and conditions in

the Agreement" and "to be personally bound by each and every condition and term

contained in the Agreement."  (*Id.* ¶ 8, Ex. B.)

The Amendment included a provision regarding the Agreement's covenants not to compete found at paragraph 17 of the Agreement.  The relevant Amendment provision reads as follows:

> **Paragraph 17.A; Your Covenants Not to Compete, During Term.**  Add to the end of the paragraph:  Notwithstanding anything in this Agreement to the contrary, we agree and acknowledge that the provisions of this section shall not be deemed applicable to, and shall not restrict, hinder or prevent the owners of membership or ownership interest in Franchisee from developing, acquiring or owning properties for the use as, or leasing as fitness centers, regardless of when and where built, acquired, or leased.

(*Id.* ¶ 22, Ex. C.)  This provision was added at Ravich's request.  (*See id.* ¶¶ 5-15.) According to Ravich, as an owner and manager of shopping centers, he requires the ability to lease and operate fitness clubs in his other shopping centers, and he is also sometimes required to take over the business of lessees which could include fitness centers.  (*Id.* ¶¶ 5, 13.)  Ravich and AF therefore negotiated the above Amendment to the parties' Agreement to enable him to meet these needs.  (*Id.* ¶¶ 5-16.)  Ravich states that the parties drafted the Amendment, rather than amending the Agreement because AF states that it does not ever directly amend its franchise agreements.  (*Id.* ¶ 6.)  Ravich further states that negotiations included three drafts of amendment language before the Amendment could acceptably accommodate his needs.  (*Id.* ¶¶ 8-15.)  According to AF, Ravich did not have any experience in the health and fitness industry prior to franchising with AF and learned how to operate and run a fitness center through franchising an ANYTIME FITNESS® center.  (Yiangou Aff. ¶¶ 17-18.)

The Agreement also includes a provision relating to ownership over information acquired through running an ANYTIME FITNESS®.  (*Id*. ¶ 8, Ex. B at 9.N.)  The relevant provision includes the following language:

> Ownership of Information.  All of the information we or our affiliates obtain from you or about your Anytime Fitness Center or its customers ("the Information") and all revenues we derive from the Information will be our property.  However, you may at any time during or after the term of this Agreement use, to the extent lawful and at your sole risk and responsibility, any information that you acquire from third parties in operating your Anytime Fitness Center, such as customer data.  The Information (except for information you provide to us or our affiliates with respect to you and your affiliates, including your respective officers, directors, shareholders, partners or members) will become our property which we may use for any reason as we deem necessary or appropriate in our discretion.

(*Id*.)

In fall 2013, a fitness center named "Fit 12– 24 Hour Health & Fitness" opened in Minnetonka, Minnesota.  (*Id.* ¶ 28.)  Fit 12 Minnetonka is approximately 100 yards from an ANYTIME FITNESS® center.  (*Id.*)  AF alleges that Mork and Ravich are involved in Fit 12 Minnetonka.  (*Id.* ¶¶ 28-30.)  Ravich denies any involvement in the Fit 12 Minnetonka.  (Ravich Aff. ¶ 2.)  AF alleges that employees and other individuals have confirmed Ravich and Mork's involvement with both Fit 12 centers.  (Doc. No. 9 ("Junker Aff.") ¶¶ 3-7; Doc. No. 11 ("McPherson Aff.") ¶¶ 1-5 & Ex. A.)  AF also alleges that Mork uses AF Names and Marks to advertise personal training services at both Fit 12 Minnetonka and the former Brooklyn Park ANYTIME FITNESS®. (Yiangou Aff. ¶ 30.)

Also in fall 2013, Ravich and Edinburgh informed AF that they did not intend to renew the Agreement for the Brooklyn Park ANYTIME FITNESS®, which was to expire on October 8, 2013. (*Id.* ¶ 23.) Edinburgh and AF agreed to extend the Agreement's expiration date to January 8, 2014 so AF could find a buyer. (*Id.* ¶¶ 24-25.) No buyer was found, and the Agreement expired. (*Id.*) Ravich then opened a Fit 12 in the location of the former Brooklyn Park ANYTIME FITNESS® ("Fit 12 Brooklyn Park"). (*Id.* ¶ 33.)

On January 9, 2014, AF sent a letter to the Brooklyn Park ANYTIME FITNESS® members stating:

> The Anytime Fitness of Brooklyn Park, MN will not be renewing their Franchise Agreement with Anytime Fitness, LLC, and will lose their rights to do business as Anytime Fitness effective 12:00 AM January 9, 2014.
>
> You do have two weeks to continue your membership at a neighboring location, or to cancel your membership.

(Ravich Aff. ¶ 29, Ex. 4.) On January 16, 2014, Edinburgh Fitness sent an e-mail to the Brooklyn Park ANYTIME FITNESS® members with the title "From Anytime to the New Fit 12 – 24 Hour Health & Fitness" stating:

> Dear Member,
>
> We wish everyone the best for the New Year and have some very exciting news to share with you. This letter is to inform you that we are in the process of changing from an Anytime Fitness franchise to a Fit 12 – 24 Hour Health & Fitness club. Effective January 9th, 2014, your old contract for access to Anytime fitness clubs will no longer be valid and you will be issued a new contract for Fit 12. The current business, management and staff will remain intact to help with your fitness needs. All amenities, such as 24/7 access and free classes, will also remain for your convenience and we are looking into some new changes to further improve your health and

fitness experience with us.  Your membership dues will remain the same on a month to month basis, with no additional charges.

We will be coordinating with all members to issue everyone new key fobs and answer any questions you may have.  To set up a time to obtain your new key fob, or if you have any questions or concerns regarding this transition, please feel free to email GetFit@Fit12.com, or call 763-503-1700.  We will work hard to make sure this transition goes as smoothly as possible for everyone, and wish to thank you for your continued support.

Sincerely,
Harley Mork
Fit 12 – 24 Hour Health & Fitness

(Yiangou Aff. ¶ 36, Ex. I.)

AF further alleges that Ravich, Mork, and the Fit 12 centers use and display AF's Names and Marks through the Fit 12 Brooklyn Park Facebook page, through Fit 12 Brooklyn Park's use of an anytimefitness.com e-mail; through displays of AF's Names and Marks at Fit 12 Brooklyn Park, through ANYTIME FITNESS® signs.  (*Id.* ¶¶ 37-41; Junker Aff. ¶¶ 6-9 & Exs. A, B; Doc. No. 10 ("Londo Aff.") ¶¶ 3-6 & Exs. A, B.)

With respect to its motion for a preliminary injunction, AF alleges that Edinburgh and Ravich are operating Fit 12 Brooklyn Park in violation of the Agreement's non-compete provisions, and that Fit 12 Brooklyn Park is operating based on the skills, knowhow and goodwill obtained through operating an ANYTIME FITNESS®, as well as stolen confidential membership information.  AF makes the same allegations with respect to Fit 12 Minnetonka.  Finally, AF alleges that Defendants, including Mork specifically, are infringing AF's Names and Marks.  AF therefore requests a preliminary injunction enjoining Edinburgh and Ravich from further violations of their covenants not to compete with AF, including prohibiting them from having any ownership, interest, or involvement

with Fit 12 Brooklyn Park and Fit 12 Minnetonka, and also enjoining Defendants from

infringing on AF's Names and Marks.  Defendants argue that they are acting within their

rights as set forth in the Amendment and other language of the Agreement. [1]

## DISCUSSION

### I.   Legal Standard

The Court considers four primary factors in determining whether a preliminary

injunction should be granted:  (1) the likelihood of the moving party's success on the

merits; (2) the threat of irreparable harm to the moving party; (3) the state of balance

between the alleged irreparable harm and the harm that granting the injunction would

inflict on the other party; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys.,

Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).  This analysis was designed to determine whether

the Court should intervene to preserve the status quo until it decides the merits of the

case.  *Id.*  In each case, the factors must be balanced to determine whether they tilt toward

or away from granting injunctive relief.  *See West Pub. Co. v. Mead Data Cent., Inc.*, 799

F.2d 1219, 1222 (8th Cir. 1986).  A preliminary injunction is an extraordinary remedy.

---

[1]     In its Complaint, AF asserts the following claims:  (1) Trademark Infringement
under the Lanham Act (all Defendants); (2) Common Law Trademark Infringement (all
Defendants); (3) Violation of the Minnesota Deceptive Trade Practices Act (all
Defendants); (4) Declaratory Judgment (Edinburgh Fitness and Ravich);
(5) Misappropriation of Trade Secrets (all Defendants); (6) Unjust Enrichment (all
Defendants); (7) Unfair Competition (all Defendants); (8) Breach of Contract for
Violations of Covenants of Confidentiality and Not to Compete (Edinburgh Fitness and
Ravich); (9) Breach of Contract for Violations of Post-Termination Obligations
(Edinburgh Fitness and Ravich); (10) Tortious Interference with Contract and Prospective
Economic Relations (all Defendants); (11) Breach of Personal Guaranty (Ravich);
(12) Injunctive Relief; and (13) Attorneys' Fees and Costs (all Defendants).  (Doc. No. 1,
Compl. ¶¶ 59-130.)  Defendants counterclaim for:  (1) Fraud; (2) Unjust Enrichment; and
(3) Breach of Contract.  (Doc. No. 18, Answer ¶¶ 22-44.)

*See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir. 1987). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

## II.    Likelihood of Success

This factor requires that the movant establish a substantial probability of success on the merits of its claims. *See Dataphase*, 640 F.2d at 114. This factor does not require a plaintiff to demonstrate a "greater than 50% likelihood that he will prevail on the merits." *Id.* at 113.

### A.    Breach of Post-Term Covenants Not to Compete

Under Minnesota law, courts uphold non-compete agreements that are "for the protection of the legitimate interest of the party in whose favor [they are] imposed, reasonable as between the parties, and not injurious to the public." [2] *Anytime Fitness, Inc. v. Fam. Fitness of Royal, LLC*, Civ. No. 09-3503, 2010 WL 145259, at *3 (D. Minn. Jan. 8, 2012) ("*Family Fitness of Royal*") (citing *Bennett v. Storz Broad. Co.*, 134 N.W.2d 892, 898 (Minn. 1965); *Adcom Express, Inc. v. EPK, Inc.*, No. C6-95-2128, 1996 WL 266412 at *4 (Minn. Ct. App. May 21, 1996).

Plaintiffs claim that Ravich and Edinburgh breached their post-term obligations not to compete. Defendants argue that the Amendment language relating to paragraph 17 essentially nullifies the Agreement's paragraph 17 provision relating to non-competition with respect to Ravich and Edinburgh. The Court disagrees with Defendants.

---

[2]    The parties agree that Minnesota law controls here.

First, the Court finds that the covenant not to compete is reasonable and enforceable. *See Anytime Fitness, Inc. v. Reserve Holdings, LLC,* Civ. No. 08-4905, 2008 WL 5191853, at *4 (D. Minn. Oct. 8, 2008) ("*Reserve Holdings*"); *Family Fitness of Royal,* 2010 WL 145259, at *4; (*see also* Doc. No. 13 ("Susag Aff.") ¶ 3, Ex. B (*Anytime Fitness, LLC v. S Fitness, LLC,* Civ. No. 62- 12-6919 (Ramsey Cnty. Dist. Ct. Aug. 31, 2012)) and  Ex. C (*Anytime Fitness, Inc. v. GymDay Corp.,* Civ. No. 62-09-4022 (Ramsey Cnty. Dist. Ct. April 16, 2009)).)

Second, based on the evidence currently before it, the Court finds that AF has established a likelihood of success on the merits of this claim.  Ravich and Edinburgh are operating at least one fitness center in the same location in which they formerly operated an AF franchise, and are therefore in violation of the explicit language of the Agreement.

The Court finds unpersuasive Defendants' arguments that the Amendment is to be read to essentially nullify the provision relating to competition.  The evidence before the Court supports AF's view that the Amendment was intended to allow Ravich to continue to engage in his primary business of commercial property ownership and management, thereby allowing him to work with tenants that have a fitness center or to take over the businesses of lessees in his shopping center, for example, his Eagan tenant, as articulated by Ravich himself.  This is different, however, from Ravich's and Edinburgh's current conduct of owning and operating a competitor's fitness center in the same location as the previous franchise—this is precisely the type of conduct a non-compete agreement is intended to prohibit.

Based on the evidence before the Court, it also appears that Ravich has at least some meaningful role in operating a second fitness center in Minnetonka within the prohibited distance of another AF franchise, and is therefore also in violation of the Agreement with respect to that fitness center.  Therefore, the Court concludes that AF has shown a likelihood of success on the merits with respect to its breach of covenants claims as to both Fit 12 fitness centers.

**B.      Declaratory Judgment Related to the Ownership and Use of the Confidential Member Data**

AF argues that Ravich and Edinburgh Fitness are misusing data from the Brooklyn Park ANYTIME FITNESS®, including all member data, that is otherwise the property of AF based on the language in paragraph 9.N. of the Agreement.

The Court concludes that on the evidence before it, AF is likely to succeed on the merits of its claim for declaratory judgment that AF has ownership over the confidential membership data to the extent that Defendants use the membership data to run the Fit 12 Brooklyn Park.  This Court agrees with the interpretation of paragraph 9.N. described by the Ramsey County District Court, which stated that a franchise agreement, with an identical provision to the provision in this case:

> defines the member information as being owned by [AF], and it cannot be used in any way not authorized by [AF], and mining those names and the information regarding the individual members of the . . . franchises and transferring them without any contact with those members to a different location, or contacting them using the confidential information for the purpose of transferring them to another health club, is not an authorized use of the information . . . .

11

(Susag Aff. ¶ 3, Ex. B, Tr. at 38 (transcript relating to a Motion for a Temporary

Restraining order in *Anytime Fitness v. S. Fitness,* No. 62-CV-12-6919 (Ramsey Cnty.

Dist. Ct. Aug. 31, 2012)).)  AF presents evidence that Defendants took the names and

information of members of the Brooklyn Park ANYTIME FITNESS® and transferred

those members (except those who quit) to their new Fit 12 Brooklyn Park center.  This is

not an authorized use of the data and is likely in violation of the parties' Agreement.

Thus, AF has shown a likelihood of success on the merits on its claim for declaratory

judgment with respect to confidential member data.

### C.     Trademark Infringement Under the Lanham Act

To establish a claim for trademark infringement, a plaintiff must show that:  (1) it

has valid, protectable trademarks, and (2) the unauthorized use of those trademarks

creates a likelihood of confusion.  *See George & Co. v. Xavier Enter., Inc.*, Civ.

No. 09-29973, 2009 WL 4730331, at *4 (D. Minn. Dec. 12, 2009).  A court considers six

factors to determine whether there is a likelihood of confusion:

> 1) the strength of the plaintiff's mark; 2) the similarity between the
> plaintiff's mark and the alleged infringing mark; 3) the degree to which the
> allegedly infringing product competes with the plaintiff's goods; 4) the
> alleged infringer's intent to confuse the public; 5) the degree of care
> reasonably expected of potential customers; and 6) evidence of actual
> confusion.

*Georgia–Pac. Consumer Prods. LP v. Myers Supply, Inc.,* 621 F.3d 771, 775 (8th

Cir. 2010) (citations omitted).  With respect to franchises and the likelihood of confusion,

a court in this District has held that "[c]ommon sense compels the conclusion that a

strong risk of consumer confusion arises when a terminated franchisee continues to use

the former franchisor's trademarks." *Country Inns & Suites by Carlson, Inc. v. Two H.O. P'ship*, Civ. No. 01-1214, 2001 WL 1587903, at *2 (D. Minn. Nov. 19, 2001).

Here, the Court finds that, on the evidence before it, AF has adequately demonstrated a likelihood of success on the merits for its Lanham Act trademark infringement claim.  AF presents evidence in the form of photographs and e-mails showing that Defendants continue to use AF Names and Marks at the Fit 12 businesses. AF shows large illuminated signs, Defendants using an anytimefitness.com e-mail address, and also AF Name and Marks at Fit 12 and on Defendants' Facebook page.  The likelihood of consumer confusion is high.  Defendants claim that they have fully addressed AF's allegations to date, but only present an affidavit in support of their claim. While the Court makes no judgment as to the veracity of the affidavit, when balanced with the photographic evidence, e-mail evidence, *and* AF's affidavits, the Court finds in favor of Plaintiff and concludes that Plaintiff has shown a likelihood of success on the merits for this claim.

### III.    Irreparable Harm

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages.  *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986).  The irreparable harm must be "certain and imminent such that there is a clear and present need for equitable relief."  *Fam. Fitness of Royal,* 2010 WL 145259, at *2 (citing *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)).

AF argues that it is suffering irreparable harm because of its loss of business and goodwill, and also because the entire AF franchise-system is being put at risk.  They also allege harm caused by the misuse of confidential member information and AF's Names and Marks.  Defendants argue that, if anything, the only harm suffered is a loss of customers to Fit 12 which only constitutes money damages.

Allowing Defendants to continue operating two fitness centers based on knowledge and skills gained from the franchisor may cause damage to the goodwill of the franchisor.  *See Soft Pretzel Franchise Sys., Inc. v. Taralli, Inc.*, Civ. No. 13-3790, 2013 U.S. Dist. LEXIS 144305, at *30-31 (E.D. Pa. Oct. 4, 2013).  AF has submitted evidence that it invested a number of resources and provided its goodwill to Defendants and that those resources allowed Defendants to develop their business.  This is true even if Defendants found those resources and goodwill to be inadequate.  AF has shown irreparable harm through unfair competition, through misuse of the AF franchise membership information and other AF operational and development information, through loss of goodwill, and through other misuse of its Names and Marks because customers are now either with Fit 12 and not ANYTIME FITNESS® or are no longer fitness center customers at all.  AF has further established irreparable harm to the franchise system on the whole.  If the non-compete covenant is not enforced, Defendants and other franchisees may think they can take advantage of AF's knowledge, information, training, and goodwill to build a business, and then leave the system and start their own identical business to avoid paying fees.  *See Reserve Holdings*, 2008 WL 5191853, at *6-7.

This case is distinguishable from *Family Fitness of Royal* in which the court found that AF had failed to establish irreparable harm because AF customers were transferred to another AF center and the defendants clearly informed customers of the lack of affiliation between the new fitness center operating in the old location. *Family Fitness of Royal*, 2010 WL 145258, at *2-3. Here, the customers have been transferred to the competing fitness center, Fit 12, and not another AF, and AF has presented evidence that Defendants have not made clear to Fit 12 members or potential members that they have no affiliation with AF. These threats of irreparable injury weigh in favor of granting a preliminary injunction.

## IV.     Balance of Harms

The third *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant. The Court concludes that the balance of the harms weighs in favor of granting a preliminary injunction. As outlined above, AF faces irreparable harm in the form of loss of goodwill, loss of customers, loss of proprietary information, and damage to the integrity and functioning of its franchise system as a whole. On the other hand, Defendants signed an Agreement and cannot now opt out of it. Any harm suffered is of their own making. Additionally, Defendants themselves do not argue serious financial harm or loss as a result of such a preliminary injunction.

## V.     Public Interest

The final *Dataphase* factor is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114. The Court concludes that it is in the public interest to

ensure that parties to franchise arrangements can contract on issues such as

non-competition and then expect each other to abide by agreed upon terms.  It is further

in the public interest to ensure that individuals cannot take and misuse proprietary

information and goodwill through a franchising system to their own financial benefit.

Though there is a public interest in free competition, the other benefits to the public

weigh in favor of a preliminary injunction in this matter.

## CONCLUSION

The Court concludes that the *Dataphase* factors weigh in favor of granting a

preliminary injunction.

## ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth

above, **IT IS HEREBY ORDERED** that AF's Motion for Preliminary Injunction (Doc.

No. [6]) is **GRANTED** as follows:

1.      Ravich and Edinburgh Fitness are immediately enjoined from directly or

indirectly, on their own account or as an employee, consultant, partner, officer, director,

shareholder, lender, or joint venturer of any other person, firm, entity, partnership,

corporation, or company, owning, operating, franchising, conducting, engaging in, having

any interest in or assisting any person or entity engaged in any fitness center, which is

located within the Protected Territory as defined in the Franchise Agreement between AF

and Edinburgh Fitness or within a twenty mile radius of any ANYTIME FITNESS®

center, wherever located, provided, however that in cities having a population of more

than 50,000 persons, the foregoing twenty mile radius restriction will be limited to a

radius of five miles from any ANYTIME FITNESS® center.  Edinburgh Fitness and

Ravich are specifically enjoined from having any direct or indirect interest or

involvement in Fit 12 – 24 Hour Health & Fitness operating at 11064 Cedar Lake Road,

Minnetonka, Minnesota and 1460 85th Avenue North, Brooklyn Park, Minnesota

(collectively the "Fit 12 Centers").

2.      Ravich and Edinburgh Fitness are not, however, prohibited or restricted

from developing, acquiring, or owning properties for use as fitness centers provided

neither Ravich nor Edinburgh Fitness own, operate, assist with the operations of, or

franchise those fitness centers within the Protected Territory.

3.      Defendants are enjoined from disclosing, referring to, transferring or

sharing with others, including but not limited to the Fit 12 Centers, Fit 12 Minnetonka,

LLC, and its officers, members, partners, directors, shareholders, and agents, confidential

information about Edinburgh Fitness's former ANYTIME FITNESS® franchised

business, including but not limited to, the names and contact information of all AF

system members, until further order of this Court.  Defendants are also enjoined from any

unauthorized use of the confidential and/or proprietary materials of AF including, but not

limited to, all manuals, supplier lists, pricing recommendations, electronic access

equipment, software, and membership agreement forms.

4.      Defendants are enjoined from using AF's registered trade name and

trademarks and all derivations thereof, including but not limited to, any use of AF's

trademarks in connection with the Fit 12 Centers.  Defendants are further enjoined from

using the telephone number formerly associated with the ANYTIME FITNESS® Center operating under Edinburgh Fitness's Franchise Agreement (that is (763) 503-1700).

5.      Defendants shall provide proof to AF's counsel of all steps taken pursuant to this Order, within seven days of the date of this Order.

6.      AF is hereby awarded its reasonable attorney fees and costs incurred in bringing this motion pursuant to Paragraph 18.A. of the Franchise Agreement and Ravich's Personal Guaranty.  AF shall submit an itemization of its attorney fees and costs to this Court by affidavit no later than fourteen days from the date of this Order for a final determination on the amount owed.

7.      Pursuant to Rule 65 of the Federal Rules of Civil Procedure, AF shall post cash or bond in the amount of $20,000 within seven days.


Dated:  April 11, 2014                    s/Donovan W. Frank
                                          DONOVAN W. FRANK
                                          United States District Judge